Billy G. SKAGGS, et al., Appellant,

v.

CITY OF KANSAS CITY, Missouri,
Respondent.

No. WD 69436.

Missouri Court of Appeals,
Western District.

Sept. 30, 2008.

Dennis J. Owens, Kansas City, MO, for appellant.

William Quirk, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, JAMES E. WELSH, Judge and JOSEPH P. DANDURAND, Judge.

JOSEPH M. ELLIS, Judge.

Appellants, Billy Skaggs and K.B. Winterowd, appeal from a judgment entered in the Circuit Court of Jackson County granting summary judgment to the City of Kansas City, Missouri, in their action seeking a declaration that the City Council exceeded its authority in extending a new employment contract to City Manager Wayne Cauthen. For the following reasons, we affirm the trial court's judgment.

The City of Kansas City, Missouri, is governed by an elected Mayor and a City Council. *I Kansas City, Mo.Code, pt. I, art. II, § 201* (1994) ("Charter"). The City Council is comprised of the Mayor and twelve elected council members. *Charter § 201.* Day to day operations, however, are controlled by a City Manager, who is the chief administrative officer of the City. *Charter § 218(a).* The intent of the citizens of Kansas City when they adopted Charter § 218(a) was for the office of City Manager to be as non-political as possible. Thus, the City Manager is to be "chosen solely on the basis of executive and administrative qualifications," and "[n]either the Mayor, nor any member of the Council, shall be chosen as City Manager during the term for which the official was elected." *Id.*

Section 218(b) prescribes the method for hiring a City Manager:

*Appointment.* The Mayor and Council shall jointly conduct a search or recruitment for a City Manager upon terms agreed upon by the Mayor and Council. Upon completion of this process the Mayor shall be responsible for submitting a resolution to the Council for the appointment of a City Manager. If an appointment is not approved, the Mayor may submit another person for consideration, or may ask that a search or recruitment process begin anew.

Following a search for a new city manager as prescribed in § 218(b), on February 13, 2003, then Mayor Kay Barnes submitted a resolution to the Kansas City, Missouri, City Council proposing that Wayne Cauthen be appointed City Manager. After the adoption of that resolution, the Mayor and City Council enacted an ordinance authorizing the city to execute an employment agreement with Cauthen. That agreement was subsequently executed by the Mayor and Cauthen.

On August 26, 2004, the City Council and Mayor enacted an ordinance authorizing the execution of a second employment agreement with Cauthen. The terms of the agreement executed by the Mayor and Cauthen provided that the agreement would be effective until April 30, 2005. After expiration of the second agreement, City Manager Cauthen continued in his employment as City Manager without a contract and was compensated in the same manner prescribed in the second agreement. On November 22, 2005, the City Council passed an ordinance authorizing a third employment agreement, which was thereafter executed. This third agreement stated that it was effective until April 30, 2008, with an automatic one-year renewal schedule if neither party provided

notice of their intent to opt out 180 days before that date.

On October 18, 2007, the City Council passed an ordinance expressing its intent to negotiate a new contract with the City Manager and indicating the City's intent to opt out of the optional year contained in the current agreement. On December 10, 2007, current Mayor Mark Funkhouser sent a memo to the members of the City Council stating that he would not sponsor a resolution to establish a new contract with City Manager Cauthen and that he wished to begin a search for a new city manager. On December 13, 2007, the City Council passed an ordinance, without the approval of the Mayor, authorizing the execution of a fourth employment agreement with City Manager Cauthen. The fourth agreement was attached thereto.

On December 18, 2007, Appellants filed the present action seeking a declaration that the City Council lacked authority to enact an ordinance authorizing a new employment agreement with the City Manager. Appellants argued that such an ordinance violated the provisions of Section 218 of the Kansas City, Missouri, Charter. Appellants also sought injunctive relief. Subsequently, the parties filed cross-motions for summary judgment. On March 3, 2008, the trial court denied Appellant's motion for summary judgment and granted the City's motion.

■ In their sole point on appeal, Appellants contend that the trial court erred in granting summary judgment to the City because the ordinance passed by the City Council violated Section 218 of the City Charter. Appellants argue that each contract entered into with the City Manager established a term of office, that the City Manager was to lose his job at the end of that term, and that only the Mayor had the authority to reappoint the City Manager to office.

■ "Appellate review of the grant of summary judgment is *de novo.*" *Midwestern Health Mgmt., Inc. v. Walker,* 208 S.W.3d 295, 297 (Mo.App. W.D.2006). "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Lewis v. Biegel,* 204 S.W.3d 354, 356 (Mo.App. W.D.2006) (internal quotation omitted). However, "[f]acts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Walker,* 208 S.W.3d at 297. "Summary judgment is appropriate only when the record demonstrates that there are no genuine disputes regarding material facts and that the moving party is entitled to judgment as a matter of law." *Lewis,* 204 S.W.3d at 356 (internal quotation omitted).

■ "Municipal charters are adopted by a vote of the citizens of a municipality." *State ex rel. Petti v. Goodwin–Raftery,* 190 S.W.3d 501, 505 (Mo.App. E.D.2006). "If consistent with and subject to the constitution and laws of the state, charter provisions have the force and effect of enactments of the legislature." *Id.* An ordinance that conflicts with the city charter is invalid. *Crittenton v. Reed,* 932 S.W.2d 403, 406 (Mo. banc 1996). We review the trial court's interpretation of charter provisions and ordinances *de novo.* *Great Rivers Habitat Alliance v. City of St. Peters,* 246 S.W.3d 556, 559 (Mo.App. W.D. 2008).

Appellants contend that Charter § 218 precludes the City Council from taking any action regarding an employment agreement with the City Manager. That section provides, in its entirety:

(a) *Qualifications and duties.* The City Manager shall be the chief adminis-

trative officer of the City. The City Manager shall be chosen solely on the basis of executive and administrative qualifications. Neither the Mayor, nor any member of the Council, shall be chosen as City Manager during the term for which the official was elected.

*(b) Appointment.* The Mayor and Council shall jointly conduct a search or recruitment for a City Manager upon terms agreed upon by the Mayor and Council. Upon completion of this process the Mayor shall be responsible for submitting a resolution to the Council for the appointment of a City Manager. If an appointment is not approved, the Mayor may submit another person for consideration, or may ask that a search or recruitment process begin anew.

*(c) Term.* The City Manager shall serve at the pleasure of the Mayor and Council.

*(d) Compensation.* The Mayor may fix the compensation of the City Manager, subject to ratification by a vote of at least six additional members of the Council.

*(e) Suspension or permanent removal from office.*

(1) *Mayor.* The City manager may be suspended with or without pay or removed from office by the Mayor subject to ratification by a vote of at least six additional members of the Council at the next scheduled meeting of the Council. During the period between Council consideration of the suspension or removal by the Mayor, the City Manager shall be suspended with or without pay as designated by the Mayor.

(2) *Council.* By a vote of nine members of the Council, not including the Mayor, the City Manager may be removed from office.

(3) *Procedure for removal.*

(A) *Notification in writing.* The City Manager shall be notified in writing of suspension or removal from office by no later than the next business day following the Council's action.

(B) *Request for statement and hearing.* The City Manager may, in writing filed with the City Clerk within ten days after receipt of the notification, demand a written statement of the reasons for such suspension or removal and a hearing before the Council. This statement shall be provided within ten days of the request. The Council shall hold a hearing no earlier than five and no later than fifteen days after the City Manager is provided a written statement of reasons for suspension or removal from office. The hearing before the Council shall be a public hearing unless otherwise ordered by a court.

(C) *Suspension and/or removal final.* The suspension or removal of the City Manager shall be final and not subject to review.

(f) *Temporary appointment.* In case of resignation, disability, suspension or removal from office of the City Manager, the Mayor shall designate some qualified person to temporarily perform the duties of the office and the appropriate compensation to be paid that person, subject to ratification by a vote of at least six additional members of the Council. In all other instances of temporary absence of the City Manager, the City Manager shall designate an acting City Manager.

Appellants argue that, by approving an employment agreement with a specific duration, the mayor and city council established the term of office for the city manager and that the city manager must be reappointed and reapproved by the city

council in order to remain in office. Appellants contend the mayor and the city council have the authority to establish such a term limitation under the language of section 218(c) providing that the city manager shall serve at the pleasure of the mayor and the city council, that this provision mandated that the mayor and the council set a term limit, and that it was their intent to set such a term limit in approving the employment agreements. Appellants claim that the suspension and permanent removal provisions of section 218(e) were only meant to apply to removal during the contract term.

■ "In construing city charter provisions, courts seek the intent of its drafters as gleaned from the language used." *Client Servs. Inc. v. City of St. Charles*, 182 S.W.3d 718, 724 (Mo.App. E.D.2006). Appellants misunderstand the clear language of the Charter provision at issue, as well as the nature of the employment agreements.

The agreements executed by the City and the City Manager were not employment contracts in the traditional sense because the City Manager assumed office pursuant to § 218 when his appointment by Mayor Barnes was approved by resolution of the City Council. After that appointment, "[t]he City Manager shall serve at the pleasure of the Mayor and Council." *Charter § 218(c)*. The employment agreements were subsequently used as a matter of convenience to set forth the compensation to be provided to the City Manager and to lay out performance guidelines, management objectives, and the like, none of which are specifically covered in § 218. The execution of the agreements did not change the nature of the City Manager's status as an at-will employee. Indeed, all of the agreements expressly stated just that. Specifically, the third employment agreement stated, "Employee shall, on an at-will basis, serve at the pleasure of the Mayor and Council of the city." Likewise, the expiration of the employment agreements did not serve to remove the City Manager from office but merely signaled the end of the time period during which the compensation, management goals, and performance guidelines set forth in the agreement were applicable. Indeed, the fact that the City Manager continued in office after the second agreement expired on April 30, 2005, and worked without a contract until on or after November 22, 2005, is compelling evidence that everyone understood that the expiration date of the agreements was not an employment termination date for the City Manager. Rather, the City Manager continued to serve unless and until removed from office.

Section 218(c), as noted above, states: *"Term.* The City Manager shall serve *at the pleasure of* the Mayor and Council" and makes no mention of a specific term of office. (Emphasis added.) This language reflects that city manager is to be an at-will position. *Wheeler v. Board of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 804 (Mo.App. W.D.1996). Section 218 goes on to specifically describe the manner in which the city manager may be removed from office, with or without cause. The City Manager may be removed from office by the Mayor if that removal is ratified by six additional members of the City Council. *Charter § 218(e)(1)*. In other words, if the Mayor favors removal, the City Manager may be removed merely by a majority (seven members of the Council) vote. However, if the Mayor objects to removal, the other members of the City Council can only remove the City Manager if they can muster a super majority of nine members of the Council. *Id. at § 218(e)(2)*.

The obvious purpose of these removal provisions is two-fold. First, as noted *supra*, the citizens of Kansas City wanted the office of City Manager to be as non-political as possible. To better achieve that

purpose, the City Manager needed to be insulated to the greatest extent possible from political pressure. Section 218(e) accomplishes that goal by preventing a simple majority of the Council from threatening the City Manager with removal unless the Mayor concurs. In so doing, it has the secondary effect of giving meaning to § 218(c), which provides that the City Manager serves "at the pleasure of the Mayor *and* Council." (Emphasis added.) For without the super majority requirement of § 218(e)(2), the provision that the Manager serves at the Mayor's pleasure would be meaningless because the Mayor's influence on the removal determination would be no greater than that of any other Council member.

■ Appellants also argue that the language of Section 218(d), granting the Mayor authority to fix the compensation of the City Manager, precludes the City Council members from introducing an ordinance addressing the compensation of the City Manager. In making that argument, Appellants ignore the fact that § 218(d) states that "[t]he Mayor **may** fix the compensation of the City Manager." " 'May' bespeaks permissive, rather than mandatory, language." *National Home Ins. Co. v. Shangri–La Dev. Co.*, 857 S.W.2d 460, 464 (Mo.App. E.D.1993). Thus, the permissive nature of the term "may" does not preclude others from acting.

With regard to compensation of city officials, § 1207 of the Kansas City Charter states that "[t]he salary or compensation of officials and officers of the City shall be fixed by ordinance except as otherwise expressly provided in this Chapter." Section 501 provides that "[t]he Mayor, all members of the Council, the City Manager and the City manager's assistants, all department directors, and others authorized by the Council may introduce legislation before the Council." These general sections would clearly allow the City Council to establish the compensation rate for the City Manager via ordinance unless otherwise provided for in the Charter.

The apparent purpose of § 218(d) is to grant the Mayor authority to agree to a compensation package when negotiating to hire a new City Manager. This is evident because § 218(b) makes the Mayor responsible for submitting the resolution to the Council for appointment of the City Manager. The Mayor could hardly submit a resolution for hiring without having negotiated a compensation package agreeable to the person being recommended for employment. Once a City Manager has assumed office, however, nothing in the City Charter provisions precludes any of the other council members from introducing an ordinance to set the compensation of the City Manager and doing so is not inconsistent with Section 218(d).

For the foregoing reasons, the trial court did not err in granting summary judgment in favor of the City. The judgment is affirmed.

All concur.