

# SUPREME COURT OF MISSOURI
## en banc

AMERICAN FEDERATION
OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES,
AFL-CIO, COUNCIL 61, *et al.*,

            Respondents,

v.

STATE OF MISSOURI, *et al.*,

            Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Opinion issued October 4, 2022*

No.  SC99179

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon Edward Beetem, Judge

The State of Missouri and various executive departments and agencies (collectively, the "State") appeal a judgment entered by the circuit court in favor of American Federation of State, County, and Municipal Employees, AFL-CIO, Council 61; Communications Workers of America, AFL-CIO, Local 6355; and Service Employees International Union, Local 1 (collectively, "Unions").  The State's appeal concerns the interpretation and validity of Senate Bill No. 1007, which removed most state employees from the merit system, designating their employment statuses as at-will.  The circuit court found SB 1007 does not mandate at-will employment for state employees and, thereby, does not restrict

the State in any way from bargaining over terms and conditions of employment with Unions' employees. Based on this interpretation, the circuit court found the rules and regulations promulgated by the Personnel Advisory Board ("PAB") to implement SB 1007 an unauthorized expansion of the law because the new rules and regulations restricted the State from bargaining over certain terms and conditions of employment. The circuit court also found SB 1007 did not violate the Missouri Constitution because it did not mandate at-will employment and, therefore, did not interfere with the right to collective bargaining or impair existing collective bargaining agreements. The circuit court alternatively found SB 1007 and the rules the PAB enacted violated multiple provisions of the Missouri Constitution if SB 1007 mandated at-will employment as the State contended. For these reasons, the circuit court entered judgment for the Unions and issued a permanent injunction, enjoining the State from altering existing collective bargaining agreements with Unions pursuant to SB 1007 and ordering the State to bargain in good faith with Unions without constraint from SB 1007, the PAB's rules and regulations, or any other state policies effectuating SB 1007.

This Court finds the circuit court's judgment erroneously declared and applied the law. SB 1007 mandates at-will employment and restricts the State's ability to agree to terms of employment inconsistent with at-will employment. Because the scope and definition of at-will employment provide for indefinite duration and termination without cause, SB 1007 prevents the State from negotiating employment terms and conditions that limit the duration of employment or require cause for termination of employment. This Court finds these restrictions on collective bargaining do not infringe on Missouri's

2

constitutional right to bargain collectively. SB 1007 also does not violate the contract clause of the Missouri Constitution because terms included in the collective bargaining agreements between Unions and the State explicitly account for modification of the agreements upon a change in law, such as SB 1007. Lastly, this Court finds many of the rules and regulations the PAB implemented are not authorized by SB 1007 to the extent they limit the State's ability to bargain with at-will employees over terms and conditions of employment that are consistent with at-will employment. The judgment, therefore, is reversed, and the case is remanded for further proceedings consistent with this opinion.

## Factual Background

In 1945, the General Assembly passed the Merit System Act, establishing a merit system of personnel administration for certain state employees. Merit System Act, 1945 Mo. Laws 1158, 1182. It also established the PAB to prescribe rules and regulations consistent with the Merit System Act. *Id.* at 1164. The legislature subsequently amended the Merit System Act and renamed it the State Personnel Law. State Personnel Law, 1979 Mo. Laws 217-18. The State Personnel Law designated state employees within several executive departments and agencies as merit-based employees who were subject to the merit system. *Id*. The merit system guaranteed these state employees certain terms and conditions of employment, including, in part, seniority considerations, grievance procedures, and for-cause and notice requirements concerning employment actions such as

3

hiring, termination, promotion, demotion, transfer, layoff, and discipline. *See, e.g.*, sections 36.030.3, 36.150, 36.380, RSMo 2016.[1]

While the merit system guaranteed state employees a number of employment protections, the legislature also limited the terms and conditions of employment the state could provide to its employees. For example, the merit system mandated a two-month minimum probationary period during which a new employee may be terminated without cause and required appeals to occur within 30 days. 1945 Mo. Laws 1170, 72, 78. The Public Sector Labor Law, enacted in 1967, also prohibited state employees from striking and required that "[i]ssues with respect to appropriateness of bargaining units and majority representative status . . . be resolved by the … board." Section 105.525, RSMo 2016; *see also* section 105.530, RSMo 2016.

Under this merit system, unions representing state employees and state executive departments and agencies routinely entered into collective bargaining agreements ("CBAs"), which set forth agreed upon terms and conditions of employment for the represented employees within the parameters of Missouri law.[2] The CBAs often included terms similar to those guaranteed by the merit system as well as additional protections, such as progressive discipline, seniority protections, grievance procedures, and for-cause and notice requirements for certain employment actions such as termination, demotion, and

---

[1] All statutory references are to RSMo Supp. 2018, unless otherwise specified.
[2] This Court previously held the constitutional right to collectively bargain applies not only to private sector employees but also to public sector employees, such as those represented by Unions in this case. *Indep. Nat'l Educ. Ass'n v. Indep. Sch. Dist.*, 223 S.W.3d 131, 139 (Mo. banc 2007).

discipline. CBAs also included terms for grievance procedures for issues such as compensation review and disagreements about the CBA terms. The CBAs, however, recognized and observed the mandatory limitations Missouri law placed on the terms and conditions of state employment. Specifically, the CBAs acknowledged employees subject to the agreement were prohibited from striking.

In 2018, the General Assembly passed SB 1007, amending the State Personnel Law. SB 1007 provides that state employees in charitable or penal institutions and agencies that are required to maintain merit standards by federal law or regulations for grant-in-aid programs ("merit employees") remain subject to the merit system. Section 36.030.1. SB 1007 also amends the State Personnel Law to limit the application of the merit system's guaranteed workplace protections to these designated merit employees. *See* sections 36.140, 36.150.1, 36.220, 36.280, 36.380, 36.390. Finally, SB 1007 provides that all non-merit employees "shall be employed at-will." Section 36.025.

In response to the passage of SB 1007, the PAB filed emergency amendments to the Code of State Regulations ("CSR"), making significant changes to existing rules related to personnel matters. The final adopted rules included the following amendments affecting seniority protections for layoffs and recalls; for-cause protections for suspensions, dismissals, and demotions; and grievance procedures for various employment actions:

> 1 CSR 20-3.070(1), deleting language on the order of layoffs and recalls based on service date and replacing it with a provision stating that layoffs "shall be administered by each respective appointing authority based on the needs of the service."

> 1 CSR 20-3.070(2)-(5), deleting language requiring cause for dismissals and demotions and including new language stating that employees "do not have

5

the right to notice, opportunity to be heard, or appeal" from a suspension, demotion, or discharge and that the appointing authority may demote and discharge at-will employees for "no reason or any reason not prohibited by law" and clarifying that the "causes for suspension, demotion [and] dismissal" apply only to merit employees.

1 CSR 20-4.020(1), including new language that "[n]o state agency may establish a grievance procedure permitting a state employee … to grieve" discipline, suspension, demotion, notice of unacceptable conduct or conditional employment, leave denial, transfer, shift change, reprimand, furlough, or "[a]ny employment action that could be alleged to have an adverse financial impact on a state employment" and "no state agency may enter into an agreement with a certified bargaining unit providing for the same or any alternative dispute resolution procedure regarding the matters prohibited [above]."[3]

Before the enactment of SB 1007 and the PAB's amendments to the CSR, Unions had entered into CBAs with the State on behalf of their members. Crucially, all the CBAs included savings clauses, recognizing the provisions of the CBA could not supersede law and allowing for modification of the CBAs upon changes in the law.

**Procedural Background**

In 2018, Unions filed suit against the State, alleging: (1) the State's implementation of SB 1007 violated article I, section 29 of the Missouri Constitution by infringing on the right of state employees to bargain collectively with their employer; (2) the State's implementation of SB 1007 violated article I, section 13 of the Missouri Constitution by impairing state employees' contractual rights provided in the unexpired CBAs; and (3) the PAB amendments to the CSR implementing SB 1007 were unauthorized by law or

---

[3] Shortly after the PAB amended the CSR, multiple state agencies amended their policies, designated state employees at-will, and refused to process grievances from employees represented by Unions.

unconstitutional under article I, sections 13 and/or 29. Unions requested injunctive and declaratory relief.

After a four-day bench trial, the circuit court ruled in the Unions' favor and issued a permanent injunction. The circuit court construed SB 1007's at-will provision as setting a default rule rather than a mandate, allowing the State and Unions to bargain over terms and conditions of employment without limitation from the new law. Based on this interpretation, the circuit court found no constitutional violation. The circuit court also found the PAB's amendments to the CSR were unauthorized and invalid because they restricted the State from collectively bargaining certain terms and conditions of employment.

The circuit court also made multiple alternative findings if SB 1007 mandated at-will employment as the State contended. The circuit court alternatively found SB 1007 violates the right to bargain collectively provided by article I, section 29 of the Missouri Constitution to the extent SB 1007 prohibits the State from bargaining for certain job protections for state employees. The circuit court also alternatively found SB 1007 substantially impairs the CBAs' terms, in violation of the right to contract as guaranteed by article I, section 13 of the Missouri Constitution. Lastly, the circuit court alternatively found the PAB's amendments to the CSR were unconstitutional for the same reasons SB 1007 was unconstitutional.

The circuit court entered judgment for Unions and issued a permanent injunction, enjoining the State from altering existing collective bargaining agreements with Unions pursuant to SB 1007 and ordering the State to bargain in good faith with Unions without

7

constraint from SB 1007, the PAB's amendments to the CSR, or any other state policies effectuating SB 1007. The State appeals the circuit court's judgment, including its statutory construction of SB 1007 and alternative holdings regarding the constitutional validity of SB 1007.[4]

**Discussion**

The State raises six points on appeal: (1) SB 1007 prohibits the State from agreeing to certain for-cause, grievance, and seniority protections with Unions; (2) SB 1007 does not violate article I, section 29; (3) SB 1007 does not violate article I, section 13; (4) the PAB's amendments to the CSR do not violate article I, sections 29 or 13; (5) alternatively, under the circuit court's interpretation, SB 1007 does not violate article I, section 29; and (6) Unions failed to establish the requisite elements for a permanent injunction. This Court addresses the State's first four arguments as resolution of these issues resolves this appeal.

**I. Statutory Interpretation of SB 1007**

All the arguments raised in the State's appeal require this Court to interpret SB 1007 and the effect the bill has on collective bargaining with state employees. Questions of statutory interpretation are reviewed *de novo*. *Norris v. Dir. of Revenue*, 304 S.W.3d 724, 725 (Mo. banc 2010). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am. Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an

---

[4] This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

8

illogical result that defeats the purpose of the legislation." *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014). When the statute's language is unambiguous, a court must give effect to the legislature's chosen language. *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 781 (Mo. banc 2003). "In construing a statute, the Court must presume the legislature was aware of the state of the law at the time of its enactment." *State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 357 (Mo. banc 2021) (internal quotation omitted).

### A. SB 1007 Mandates Most State Employees Be Employed At-Will

The circuit court found SB 1007 does not mandate at-will employment but, rather, sets a default rule of at-will employment, permitting the State and Unions to bargain over more protective terms and conditions of employment. On appeal, the State argues the plain and ordinary language of SB 1007 mandates all non-merit, state employees be employed at-will. This Court agrees.

SB 1007 sets forth:

> Except as otherwise provided in section 36.030, *all employees of the state shall be employed at-will*, may be selected in the manner deemed appropriate by their respective appointing authorities, shall serve at the pleasure of their respective appointing authorities, and may be discharged for no reason or any reason not prohibited by law, including section 105.055.

Section 36.025 (emphasis added). *Webster's Third New International Dictionary* defines "shall" to mean: "used to express a command or exhortation" or "used in laws, regulations or directives to express what is mandatory." *Shall*, Webster's New Int'l Dictionary at 2085 (3d ed. 2002). Caselaw consistently supports that the word "shall" imposes a mandatory duty. *See Me. Cmty. Health Options v. United States*, 140 S.Ct. 1308, 1321 (2020); *see also State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009); *Bauer v. Transitional Sch. Dist.*

9

*of City of St. Louis*, 111 S.W.3d 405, 408 (Mo. banc 2003). The plain and ordinary meaning of SB 1007, therefore, mandates all state employees, absent statutory exception, be employed at-will.

Despite the plain and clear language of the at-will mandate in SB 1007, Unions contend SB 1007 merely creates a default rule, relying on *Cooperative Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 583 (Mo. banc 2017). At issue in *Cooperative Home* was whether a statute that provided "every employer shall pay to each employee wages at the rate of $6.50 per hour" meant employers could only pay employees exactly $6.50 per hour or meant employers could not pay employees less than $6.50 per hour. *Id.* at 577, 583. This Court explained the minimum wage statute's explicit purpose was to protect employees by providing more balance in bargaining power between employees and employers. *Id.* at 583. This Court then went on to conclude it would be completely at odds with the statute's recognized purpose to interpret the amount as mandatory instead of as a floor. *Id.*

A similar conclusion would not be warranted here. SB 1007's purpose is to modify the merit system by narrowing its application to state employees in charitable or penal institutions and agencies that are required to maintain merit standards by federal law or regulations for grant-in-aid programs. SB 1007 carries out this purpose by designating these employees as merit employees and all other state employees as at-will. *See* sections 36.030.1(1), 36.025. Nothing in SB 1007 indicates a desire to exclude state employees represented by Unions from this newly required at-will employment status. Unlike the contrary recognized purpose in *Cooperative Home*, interpreting SB 1007 to mandate non-

10

merit state employees be employed at-will is not at odds with SB 1007's purpose. For this reason, *Cooperative Home* can be distinguished and does not support Unions' interpretation of SB 1007.[5]

Unions also attempt to circumvent the unavoidable, plain and clear language of SB 1007 by pointing to House Bill No. 1413, a public employee collective bargaining bill passed the same day as SB 1007. HB 1413 amended Missouri's Public Employee Labor Law, which provided "a loose collective-bargaining framework for public employees." *Mo. Nat'l Educ. Ass'n v. Mo. Dep't. of Lab. & Indus. Rels.*, 623 S.W.3d 585, 588 (Mo. banc 2021). Among other things, HB 1413 provided, "[e]very labor agreement shall include a provision reserving to the public body the right to hire, promote, assign, direct, transfer, schedule, discipline, and discharge public employees." Section 105.585. HB 1413 also included a provision that clarified who would be affected by the Public Sector Labor Law. Section 105.503. It provided that the law "shall apply to all employees of a public body, all labor organizations, and all labor agreements between such a labor organization and a public body" except, as relevant here, "[p]ublic safety labor organizations and all employees of a public body who are members of a public safety labor

---

[5] Moreover, to adopt Unions' interpretation, this Court must add by implication the words "at least" into SB 1007, effectively changing the language to "all employees of the state shall [at least] be employed at-will." Because the language of the statute is clear and unambiguous, no additional language should be implied, and this Court must give effect to the legislature's chosen language. *Asbury v. Lombardi*, 846 S.W.2d 196, 202 n.9 (Mo. banc 1993) ("A court may not add words by implication to a statute that is clear and unambiguous."); *Kerperien*, 100 S.W.3d at 781.

11

organization' or to the department of corrections and its employees."[6] *Mo. Nat'l Educ. Ass'n*, 623 S.W.3d at 589 (alteration in original) (quoting section 105.503).

Unions contend HB 1413's focus on collective bargaining demonstrates the legislature intended HB 1413 to address collective bargaining and SB 1007 to address statutory merit protections. Unions also contend interpreting SB 1007 to mandate non-merit state employees be employed at-will and restrict the terms the State can bargain over causes conflict between HB 1413 and SB 1007. According to Unions, inconsistency exists because HB 1413 allows employees of the department of corrections to bargain over certain job protections, while SB 1007 would preclude the State from bargaining over certain job protections with department of corrections employees if SB 1007 was interpreted as the State contends.

Unions' arguments are unavailing.[7] No direct conflict exists between HB 1413 and SB 1007 because nothing in HB 1413 precludes department of corrections employees from being considered at-will employees. Thus, both HB 1413 and SB 1007 could be given their intended effect even if SB 1007 is interpreted to mandate at-will employment for non-merit state employees. *See BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo.

---

[6] This Court found HB 1413's exemption for public safety labor organizations violated equal protection. *Mo. Nat'l Educ. Ass'n*, 623 S.W.3d at 593.

[7] SB 1007 does not restrict the State from bargaining with all department of corrections employees. Rather, SB 1007 excludes employees in "penal institutions" from the at-will employment mandate, allowing the State to bargain over job protections that might otherwise be precluded for at-will employees. Penal institutions are defined by SB 1007 as "an institution within state government holding, housing, or caring for inmates, patients, veterans, juveniles, or other individuals entrusted to or assigned to the state where it is anticipated that such individuals will be in residence for longer than one day." Section 56.020(9).

12

banc 2012) ("It is presumed that consistent statutes relating to the same subject are intended to be read consistently and harmoniously in their many parts."); *see also State v. Rowe*, 63 S.W.3d 647, 650 (Mo. banc 2002) ("Courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning.").

## B. Scope and Definition of At-Will Employment

As discussed above, SB 1007 mandates all state employees, except merit employees, be employed at-will. *See* section 36.025. SB 1007 also specifically eliminated certain terms and conditions of employment previously guaranteed to most state employees and limited the guaranteed terms and conditions of employment to merit employees. SB 1007, however, does not explicitly prohibit at-will employees from bargaining over terms and conditions of employment. Instead, certain terms and conditions of employment are simply no longer guaranteed by law as they are for merit employees. The only term and condition of employment mandated by SB 1007 that would impact collective bargaining for non-merit state employees is the at-will employment requirement. SB 1007 prohibits the State from bargaining with Unions over terms and conditions that impact or alter this at-will status for non-merit, state employees. After the legislature enacted SB 1007, the States interpreted the new law to limit its ability to certain terms and conditions of employment, including grievance, seniority, and for-cause protections as the State contends, this Court must determine what the legislature intended by mandating at-will employment.

"The at-will employment doctrine is well-established Missouri law." *Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 345 (Mo. banc 2010). Employment at-will is

13

consistently defined as an employment relationship in which the employer and employee have the right to terminate employment at any time for any reason, or no reason at all. *See Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 775 (Mo. banc 2014) ("Key indicia of at-will employment include indefinite duration or employment and the employer's option to terminate the employment immediately without cause."); *Margiotta*, 315 S.W.3d at 345 ("Absent an employment contract with a definite statement of duration ... an employment at will is created. An employer may terminate an at-will employee for any reason or for no reason." (alteration in original) (internal quotation omitted)); *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. banc 2010) ("[T]he general rule in Missouri is that an at-will employee may be terminated for any reason or no reason[.]"); *Culver v. Kurn*, 193 S.W.2d 602, 603 (Mo. 1946) ("According to decisions of the appellate courts of this State a contract of employment without term may be terminated at the will of either party without cause."); *Mosley v. Members of Civ. Serv. Bd. for City of Berkeley*, 23 S.W.3d 855, 859 (Mo. App. 2000) ("Employment is considered to be at-will, that is, terminable for cause or without cause, in the absence of a contract of employment, an ordinance, or a statute conveying a property interest in the employment or providing that the employee can be discharged only for cause."); *McCoy v. Spelman Mem'l Hosp.*, 845 S.W.2d 727, 730 (Mo. App. 1993) ("Without a statement of duration, an employment at will is created which is terminable at any time by either party with no liability for breach of contract."). This well-recognized definition of at-will employment sets forth two conditions of employment: indefinite duration and termination without cause. *See Baker*, 450 S.W.3d at 775-76 (finding an employment status remained at-will because employment and arbitration

14

agreements did not define a duration of employment and the employer retained the right to terminate employment at any time for any reason); *Tettamble v. TCSI-Transland, Inc.*, 407 S.W.3d 717, 721 (Mo. App. 2013) (finding employment was at-will because terms of addendum did not provide for a definite statement of duration of employment); *Sadler v. Village of Bel-Ridge*, 741 S.W.2d 889, 891 (Mo. App. 1987) (finding an order, which provided many guaranteed terms of employment, did not modify an at-will employment status because it did not limit the employer's right to terminate employment at any time without cause).

Because this Court must presume the legislature understands and knows the law, *State ex rel. T.J.*, 632 S.W.3d at 357, this Court finds the at-will employment relationship mandated by SB 1007 requires an indefinite term of employment and the ability to terminate employment without cause. SB 1007, therefore, restricts the State from bargaining over terms and conditions of employment that provide for a definite duration of employment or require cause for termination. But SB 1007 does not limit state executive departments and agencies from bargaining over terms and conditions of employment that do not similarly conflict with at-will employment.

### C. SB 1007's Limits on Certain Terms and Conditions of Employment

The State argues SB 1007 limits their ability to agree to certain terms and conditions of employment, including grievance procedures, for-cause protections, and seniority protections because these subjects of collective bargaining are necessarily inconsistent with at-will employment. But grievance procedures, seniority protections, and for-cause requirements are not necessarily inconsistent with at-will employment. These terms and

15

conditions of employment are inconsistent with at-will employment only if they limit the right to terminate employment at any time without cause.

Under Missouri caselaw, grievance procedures and other similar terms and conditions of employment are not always inconsistent with at-will employment. In *Sadler*, the court of appeals analyzed whether employment guidelines set by a police department changed the terms of employment so that the employment relationship was no longer at-will. 741 S.W.2d at 890-91. The employment guidelines (1) established a "policy in reference to disciplinary action, deportment of personnel, grievances, privileges and procedures, and the appeal rights of [employees]"; (2) "authorize[d] any supervisory officer to reprimand a subordinate for cause and any commander to reprimand or suspend a subordinate for cause"[;] (3) gave "the police chief the sole authority for administering disciplinary actions other than ... those allowed all supervising officers and commanders"[;] and (4) enumerated the penalties the police chief may impose. *Id*. at 891 (internal quotation omitted). The court of appeals found the plain language of the employment guidelines did not alter the at-will status of its employees because the guidelines did not limit the employer's "right to terminate an employee without cause." *Id.* The court of appeals specifically noted that providing a disciplined or dismissed employee the right to appeal an employer's employment decision "does not of itself change an employee's status as an employee at will." *Id.*

In *Daniels v. Board of Curators of Lincoln University*, an employee sued his employer for violations of his procedural due process rights after being terminated without a hearing. 51 S.W.3d 1, 3 (Mo. App. 2001). Although the employee was employed

16

at-will, testimony provided that the employer "had informally set aside its at-will employment policy in favor of allowing employees grievance and appeals procedures." *Id.* at 8. These procedures, included in a handbook, allowed "employees to request a 'bill of particulars' regarding the reasons for termination and provides a right to a hearing on request." *Id.* The grievance procedure also provided that employees have the right "to express their concerns and to seek a solution concerning disagreements arising from working relationships, working conditions, employment practices, or differences of interpretation of policy which might arise between the [employer] and its employees." *Id.* at 9. The handbook also included a termination for-cause requirement. *Id.* at 8. After reviewing these facts, the court of appeals analyzed whether the handbook altered the at-will employment relationship between the employee and employer. *Id.* at 9-10. The court of appeals found that, although "[t]he granting of a right to appeal does not of itself change an employee's status as an employee at will," the employer "provided more than a mere right to review" and altered the at-will employment status "by its promise that termination would not occur without good cause." *Id.* at 10.

Based on this caselaw and the definition and scope of at-will employment, this Court finds grievance procedures and other similar terms and conditions of employment are not necessarily inconsistent with at-will employment. Grievance protections are inconsistent with at-will employment only when they limit the right to terminate employment at any time without cause.

For the same reason, seniority and for-cause protections are not necessarily inconsistent with at-will employment. Regarding seniority protections, if an employer is

17

required to consider seniority as a deciding factor in termination, the employer's right to discharge an employee at any time without cause would be restricted by that individual's amount of experience. This seniority protection, therefore, would interfere with the at-will employment relationship. However, seniority protections that did not restrict the right of the employer to terminate an employee at any time without cause would not interfere with the at-will employment relationship.

In regards to for-cause protections, a necessary element of at-will employment is that either party can terminate the employment relationship for any reason or no reason at all. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988); *Mosley*, 23 S.W.3d at 859. Outside of certain legal limitations,[8] any employment term or condition that limits the ability to terminate employment is wholly inconsistent with at-will employment.[9] But for-cause job protections may not always interfere with the right to terminate employment without cause. For example, a for-cause protection that limited disciplinary action against an employee to certain conduct would not interfere with the right to terminate employment without cause and would not be inconsistent with at-will employment. *See Sadler*, 741 S.W.2d at 891. SB 1007, therefore, merely prohibits the

---

[8] An employer cannot terminate an at-will employee for being a member of a protected class, such as "race, color, religion, national origin, sex, ancestry, age or disability." *Keveney v. Mo. Military Academy*, 304 S.W.3d 98, 101 (Mo. banc 2010); section 213.055, RSMo 2016. An employer also cannot terminate an at-will employee for a reason that goes against public policy. *Fleshner*, 304 S.W.3d at 92.

[9] A distinction might exist, however, for terms that provide "certain situations in which discharges may occur" as long as they "are not exclusive of other grounds "or" preclude the right to discharge at-will." *Maddock v. Lewis*, 386 S.W.2d 406, 411 (Mo. 1965).

18

State from bargaining over grievance procedures, for-cause requirements, and seniority protections that would limit the right to terminate employment at any time without cause.

## II. Constitutional Challenges

The parties dispute the constitutional validity of SB 1007 with respect to rights provided by article I, sections 29 and 13 of the Missouri Constitution. This Court finds SB 1007 does not infringe on the rights guaranteed by these constitutional provisions. A challenge to the constitutional validity of a statute is reviewed *de novo*. *Mo. Nat'l Educ. Ass'n*, 623 S.W.3d at 590. A statute is presumed valid, but, if it conflicts with provisions in the state constitution, this Court must find the statute invalid. *Priorities USA v. State*, 591 S.W.3d 448, 452 (Mo. banc 2020). The challenger bears the burden of proving the statute's constitutional invalidity. *Id.*

### A. Article I, Section 29

The circuit court held SB 1007 violates the right to collective bargaining as provided by article I, section 29 to the extent SB 1007 mandates at-will employment for all non-merit state employees as it would prohibit the State from bargaining over core subjects of employment. The State contends SB 1007 and its limitations on the state's ability to bargain over certain terms and conditions of employment does not violate article I, section 29. This Court agrees and finds SB 1007 does not infringe on article I, section 29.[10]

---

[10] Unions argue this Court should apply strict scrutiny in analyzing whether SB 1007 violates the right to collective bargaining. The State argues no tiered review is necessary and, if so, rational basis is appropriate. This Court need not decide this issue because SB 1007 does not infringe on article I, section 29 under any level of scrutiny.

Article I, section 29 of the Missouri Constitution provides "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." This right applies to both private-sector and public-sector employees. *Indep.- Nat'l Educ. Ass'n*, 223 S.W.3d at 133. "[W]hen article I, section 29 was adopted as part of Missouri's current constitution, the words 'bargain collectively' were common usage for negotiations conducted in good faith and looking toward a collective agreement." *Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 366 (Mo. banc 2012). Employers, therefore, must bargain in "good faith," which requires "both parties sincerely undert[ake] to reach an agreement" and "bargain with a serious attempt to resolve differences." *Id.* at 367.

SB 1007 does not infringe on the right to collective bargaining set out in article I, section 29 because it still allows the State to engage in good faith bargaining with Unions. As set forth in *Ledbetter*, the guaranteed right to bargain collectively imposes a duty on employers to negotiate in good faith with the purpose to form an agreement. *Id.* at 364. Under this Court's interpretation of SB 1007, article I, section 29 does not prevent the State from bargaining in good faith with Unions representing at-will employees. Rather, it merely limits the terms and conditions of employment the State is authorized to bargain. Under SB 1007, the State is not authorized to bargain over terms and conditions of employment that are inconsistent with at-will employment. The State, however, is free to negotiate any and all employment terms and conditions that SB 1007 does not specifically restrict.

20

The legislature has historically limited the terms and conditions of employment that the State can bargain over in good faith. Shortly after voters ratified article I, section 29, the legislature passed the 1945 Merit Act, which contained numerous requirements that the State could not bargain away, including a probationary period during which a new employee could be terminated without cause. 1945 Mo. Laws 1170, 72. The Public Sector Labor Law also contained provisions that limited what the State could agree to in CBAs. These provisions restricted employees' right to strike and required that "[i]ssues with respect to appropriateness of bargaining units and majority representative status . . . be resolved by the … board." Section 105.525, RSMo 2016; *see also* section 105.530, RSMo 2016. Although employment status is a significant component of employment, it is still only a term and condition of employment, and SB 1007 still permits Unions representing at-will employees and the State to bargain in good faith for various terms and conditions of employment that are consistent with at-will employment.

Under the confines of SB 1007, the State, therefore, is still able to negotiate terms of employment in good faith to try to reach an agreement, fulfilling the purpose of collective bargaining under article I, section 29. *Ledbetter*, 387 S.W.3d at 364. For all these reasons, SB 1007 does not infringe on the right to collectively bargain as guaranteed in section I, article 29.

**B. Article I, Section 13**

The circuit court held SB 1007 violates the contracts clause set forth in article I, section 13 because the at-will mandate substantially impairs existing CBAs.[11] The State contends SB 1007 does not impair the CBAs because each CBA contains a savings clause that expressly recognizes the agreement is subject to modification upon a change in the law. This Court agrees. Because the savings clause in each CBA precludes substantial impairment of the agreements, SB 1007 does not violate article I, section 13.

Article I, section 13 of the Missouri Constitution guarantees "no … law impairing the obligation of contracts … can be enacted." Agreements reached through collective bargaining are binding contracts, *Indep. Nat'l Educ. Ass'n*, 223 S.W.3d at 140-41, and therefore may not be impaired unconstitutionally. Missouri courts interpret the state impairment of contract provision in the same manner as the federal constitutional provision. *See Educ. Emps. Credit Union v. Mut. Guar. Corp.*, 50 F.3d 1432, 1437 n.2 (8th Cir. 1995); *see also* U.S. Const. art. I, sec. 10, cl. 1 ("No state shall … pass any … law impairing the obligation of contracts."). To succeed on a claim alleging violation of article I, section 13, a plaintiff must show: (1) "a contractual relationship"; (2) "a change in law [that] impairs that contractual relationship"; and (3) that "the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).

---

[11] In arriving at this conclusion, the circuit court explained clauses in two of the Unions' CBAs extended the contracts to the date when SB 1007 and the PAB's amendments to the CSR went into effect. The State contends the CBAs were expired. This Court need not determine whether the CBAs were in effect and contractual relationships existed between Unions and the State because, regardless, the savings clauses in all the CBAs prevent substantial impairment of the agreements.

22

Contract interpretation is a question of law, which this Court also reviews *de novo*. *Griffitts v. Old Repub. Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018). "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Unless the contract is ambiguous, the intent of the parties is determined based on the contract alone, not on extrinsic or parol evidence. *Id.* "[T]he intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it." *Id.*

The language in the CBAs demonstrates Unions' and the State's intent to incorporate all relevant future changes to state law and regulations into the CBAs pursuant to their savings clauses. As the United States Supreme Court acknowledged in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, when a contract expressly provides that its terms are subject to relevant changes in law, such a provision could be interpreted to incorporate all future state regulations; thus, disposing of an article I, section 13 claim. 459 U.S. 400, 416 (1983). Here, the CBAs (1) provide that "[t]he parties recognize the provisions of this [CBA] cannot supersede law" and (2) dictate a procedure for the parties to modify a CBA when a CBA provision is "determined to be contrary to state or federal law or regulation." This language demonstrates the parties understood the terms of the contract were subject to alteration and foresaw the potential for relevant changes to the law, such as SB 1007, at the time of contracting. *See id*. Drawing the parties' intent from the language of the contract, the State and Unions clearly did not intend for a change in law to invalidate the CBAs but, instead, intended for these savings clauses to provide for the

23

modification of the contracts. This Court must give effect to the parties' intent, *J.E. Hathman*, 491 S.W.2d at 264; therefore, SB 1007 does not substantially impair the CBAs.

Despite the clear language of the savings clauses, Unions contend SB 1007 substantially impairs the CBAs because any other finding would render the agreements illusory. Unions argue it is absurd "to interpret a savings clause as giving the State unfettered authority to legislate away the terms of its own contracts and 'determine' for itself that they are 'contrary to state or federal law or regulation.'"[12] These arguments, however, are disingenuous, as Unions agreed to contracts that provided the terms of the agreement could not supersede state law and provided a mechanism to modify the agreements if the certain provisions did violate the law. *See id.* Because Unions contractually agreed that the CBAs were subject to modification upon a change in law, SB 1007 does not substantially impair the contractual obligations in the CBAs. SB 1007, therefore, does not violate article I, section 13 of the Missouri Constitution.

### III. The PAB's Amendments to the CSR

The circuit court held that all the PAB's amendments to the CSR are unauthorized by SB 1007 and unlawful. This Court finds many of the amendments to the CSR exceed statutory authority to the extent they prevent the State from bargaining over terms and conditions of employment that would not impact employees' at-will employment statuses.

---

[12] Unions rely on *Chiles v. United Faculty of Florida*, 615 So.2d 671 (Fla. 1993), to support this argument. This Court, however, does not find *Chiles* persuasive and is not bound by an opinion from another state's supreme court. *State v. McIntosh*, 540 S.W.3d 418, 425, n.5 (Mo. App. 2018) (internal citation and quotation omitted) ("While cases from other jurisdictions can provide useful and insightful guidance, they are not conclusive or binding precedent." (internal quotations omitted)).

In reviewing a declaratory judgment on the validity of a rule or regulation, the Court will affirm "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012) (internal quotation omitted). Section 36.070, provides the PAB with authority "to prescribe such rules and regulations not inconsistent with the provisions of this chapter as it deems suitable and necessary to carry out the provisions of this chapter." As applicable here, rules and regulations promulgated by the PAB are invalid if: "(1) There is an absence of statutory authority for the rule or any portion thereof; or (2) [t]he rule is in conflict with state law…." Section 536.014, RSMo 2016. Missouri courts have repeatedly recognized that a regulation must be within the authority of a statute and "cannot expand or modify a statute." *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 126 (Mo banc. 2014). "Administrative rules and regulations are interpreted under the same principles of construction as statutes." *Reuter v. Hickman*, 563 S.W.3d 816, 820 (Mo. App. 2018).

The PAB's amendments to the CSR must be authorized by SB 1007 or other existing law. The circuit court found the PAB's amendments to the CSR unauthorized and invalid, erroneously declaring that SB 1007 merely set a default rule, rather than a mandate, allowing the State and Unions to bargain over terms and conditions of employment without constraint from SB 1007. However, as previously explained in this opinion, the plain language of SB 1007 mandates all non-merit state employees be employed at-will and does not create a default rule that permits the State and Unions to bargain over terms and conditions inconsistent with at-will employment. SB 1007 allows the State and Unions to

25

bargain over terms and conditions of employment as long as the terms and conditions do not impact the mandated at-will employment status of Union employees. As a result, many of the PAB's amendments to the CSR exceed statutory authority to the extent they prevent Unions from bargaining over terms and conditions of employment that would not impact or change the employees' at-will employment status. Therefore, while the circuit court's ultimate conclusion finding some of the rules invalid may be correct, its reasoning for doing so was legally erroneous.[13]

**A. Seniority Protections – 1 CSR 20-3.070(1)**

In an effort to implement SB 1007, the PAB amended 1 CSR 20-3.070(1). Before the enactment of SB 1007, this rule provided a detailed procedure on the order of employment layoffs based on seniority. The PAB amended this rule by deleting the language guaranteeing seniority and replacing it with a provision stating that layoffs "*shall be administered by each respective appointing authority based on the needs of the service.*" (Emphasis added). Under this amended rule, Unions and the State are precluded from negotiating seniority protections for layoffs. As discussed previously in this opinion, the word "shall" typically imposes a mandatory duty, *Bauer*, 111 S.W.3d at 408, and no language in the rule shows reason for an alternative interpretation. The mandatory duty to make layoff determinations "based on the needs of the service" implicates the appointing authority's discretion because discerning the needs of the agency and how to best address

---

[13] The circuit court alternatively found the PAB's amendments to the CSR were unconstitutional for the same reasons SB 1007 was unconstitutional. This basis is also legally erroneous as this Court finds SB 1007 is constitutional.

26

those needs requires the appointing authority to apply their personal and professional judgment. This rule, thus, requires all layoff decisions be made by the appointing authority, applying its discretion.

To use their discretion to make layoff determinations, such as whether the agency needs to lay off employees or who to lay off, the appointing authorities could consider various factors, including seniority. While the amended rule gives the appointing authority the discretion to consider seniority, it prohibits at-will employees from having guaranteed seniority protections from layoffs because this would improperly limit the appointing authority's discretion, which is mandated by the PAB's rule. For example, an appointing authority might think it is in the best interest of its agency to lay off one employee, but it would be precluded from doing so if that employee had guaranteed seniority protections. 1 CSR 20-3.070(1), therefore, precludes the State from bargaining over seniority layoff protections with at-will employees.

To determine if 1 CSR 20-3.070(1), and its prohibition on seniority protections for layoffs, is an unauthorized expansion of SB 1007, the Court must identify the impact of SB 1007 on seniority protections for layoffs. SB 1007 mandates at-will employment and restricts the State from bargaining over terms and conditions of employment that are inconsistent with the at-will employment status. While seniority protections for termination are inconsistent with at-will employment, federal caselaw indicates seniority protections for layoffs and recalls are consistent with at-will employment. In *Clark v. Kellogg*, an employee argued he was not offered employment at-will because the CBA provided new employees with seniority rights for order of layoff and recall. 205 F.3d 1079,

27

1082 n.2 (8th Cir. 2000). The Eighth Circuit rejected this argument because a layoff can be distinguished from termination, finding, "[a] layoff, for purposes of the CBA, is a discontinuance in employment with some expectation of recall, no break in seniority, and no interruption in benefits. Termination, on the other hand, encompasses a complete break in the employment relationship with no expectation of recall." *Id.*

This Court finds the Eighth Circuit's distinction in *Clark* between termination and layoffs persuasive. Because a layoff is not a complete break in employment, seniority protections for layoffs do not infringe on the right to terminate employment at any time without cause. Seniority protections for layoffs, therefore, are consistent with at-will employment. Because 1 CSR 20-3.070(1) precludes seniority protections for layoffs and SB 1007 does not, this rule is an unauthorized expansion of SB 1007 and is, therefore, invalid.[14]

---

[14] The State argues SB 1007 does not allow the State to bargain over seniority layoff protections with at-will employees because section 36.025 states at-will "employees of the state … shall serve at the pleasure of their respective appointing authorities." The language to "serve at the pleasure," however, just reflects that these employees are to be employed at-will and can be terminated at any time for any reason. *See Van Kirk v. Bd. of Police Comm'rs of Kan. City*, 586 S.W.2d 350, 353 (Mo. banc 1979) (finding the language "shall serve during the pleasure" meant the employees were at-will and "may be removed by the board with or without cause or reason whenever, in its discretion"); *see also Skaggs v. City of Kan. City*, 264 S.W.3d 694, 698 (Mo. App. 2008) (finding the language "shall serve at the pleasure of" reflects the position is at-will). This language in SB 1007 does not change or impact layoffs because layoffs are distinct from termination as discussed above. This language, therefore, supports this Courts conclusion that SB 1007 precludes seniority protections for termination, but not layoffs.

**B. For-Cause Protections – 1 CSR 20-3.070(2), (4)-(5)**

The next PAB rule at issue is 1 CSR 20-3.070(2), (4)-(5), which focuses on for-cause protections. 1 CSR 20-3.070(2) requires for-cause protections only for merit employees for suspensions, demotions, and dismissals. 1 CSR 20-3.070(4)-(5) specify that at-will employees may be demoted and dismissed "for no reason or any reason not prohibited by law." Under these rules, the State cannot bargain over for-cause protections with at-will employees for demotions or dismissals. However, the rules would still permit bargaining over for-cause protections for suspension.

SB 1007 prohibits the State and at-will employees from bargaining over for-cause protections for dismissals because, as explained above, any employment term or condition that limits the ability to terminate employment is wholly inconsistent with at-will employment. It is less clear initially whether SB 1007 prohibits for-cause protections for demotions. The layoff analysis from *Clark* provides guidance on whether for-cause protections for demotions limit the right to terminate employment without cause. In *Clark*, the federal court persuasively held that terms and conditions governing employee layoffs were consistent with at-will employment because a layoff is not a complete break in employment. 205 F.3d at 1082 n.2. Similarly, demotions do not result in a complete break in employment with no expectation of recall but, instead, generally result in a change of work responsibilities, title, or compensation. For-cause protections for demotions, therefore, would not violate the at-will mandate in SB 1007 by limiting the employer's right to terminate employment without cause. *See Sadler*, 741 S.W.2d at 890-91; *see also Daniels*, 51 S.W.3d at 10. Because 1 CSR 20-3.070(2), (4)-(5) preclude for-cause

29

protections for demotions and SB 1007 does not authorize such a restriction, this rule is an unauthorized expansion of SB 1007 and is, therefore, invalid.

**C. Grievances – 1 CSR 20-3.070(3)-(5) and 1 CSR 20-4.020(1)**

The PAB amended 1 CSR 20-3.070(3)-(5) to provide that at-will employees "do not have the right to notice, opportunity to be heard, or appeal from a "suspension, demotion, or discharge." This language does not preclude the State and Unions from bargaining over these workplace protections but provides that these workplace protections are not guaranteed to at-will employees as they are to merit employees. Thus, 1 CSR 20-3.070(3)-(5) are valid and authorized because SB 1007 specifically removed non-merit state employees from the merit system's guaranteed protections, including grievance procedures. The unauthorized preclusion from bargaining over these workplace protections can be found in 1 CSR 20-4.020(1).

The PAB's amendments to 1 CSR 20-4.020(1) preclude bargaining over grievance procedures in various areas of employment. 1 CSR 20-4.020(1), titled "Prohibited Grievance Procedures", sets forth "[n]o state agency may establish a grievance procedure permitting a state employee" to grieve discipline, suspension, demotion, notice of unacceptable conduct or conditional employment, leave denial, transfer, shift change, reprimand, furlough, or "[a]ny employment action that could be alleged to have an adverse financial impact on a state employment." *Id*. 1 CSR 20-4.020(1)(A)1A-J. 1 CSR 20-4.020(1)(B) states "no state agency may enter into an agreement with a certified bargaining unit providing for the same or any alternative dispute resolution procedure regarding the

matters prohibited [above]." These rules explicitly prohibit the State from bargaining with Unions for grievance procedures in the various listed employment actions.

SB 1007, however, limits the State from agreeing to grievance procedures only when the procedures would be inconsistent with at-will employment; and grievance procedures are inconsistent with at-will employment only if they impact the ability to terminate employment at any time for any reason. Grievance procedures for the various employment actions listed in 1 CSR 20-4.020(1)(A) would not necessarily limit the employer's right to terminate employment at any time and without cause. Grievance procedures for suspension, demotion, and furlough would not limit this right because they do not represent a complete break in employment. *See generally Clark*, 205 F.3d at 1082 n.2. Grievance procedures for the other listed employment actions, including discipline, notice of unacceptable conduct or conditional employment, leave denial, transfer, shift change, reprimand, and any employment action that could be alleged to have an adverse financial impact on state employment, also are not necessarily inconsistent with at-will employment because grievance procedures for these employment actions would not limit the employer's right to terminate employment at any time without cause. Because 1 CSR 20-4.020(1) limits the State from bargaining with Unions for grievance procedures for various employment actions that do not limit the right to terminate employment at-will, 1 CSR 20-4.020(1) is an unauthorized expansion of SB 1007 and is, therefore, invalid.

**Conclusion**

In sum, this Court finds the plain language of SB 1007 mandates all non-merit state employees be employed at-will, and, as a result, the State is not permitted to bargain with Unions over terms and conditions of employment that would be inconsistent with at-will employment. These terms and conditions are inconsistent with at-will employment only if they limit the right to terminate employment at any time without cause. This Court also finds SB 1007 does not violate the right to bargain collectively as guaranteed by article I, section 29 of the Missouri Constitution because the State is still able to bargain with Unions in good faith for various terms and conditions of employment consistent with at-will employment. SB 1007 also does not substantially impair obligations in existing contracts in violation of the contract clause in article I, section 13 of the Missouri Constitution because the savings clauses in each CBA accounted for modification upon relevant changes in state law. Lastly, many of the PAB's amendments to the CSR are unauthorized by SB 1007 and are unlawful to the extent they prohibit the State from bargaining over terms and conditions of employment that are consistent with at-will employment.

Because the circuit court erred in finding SB 1007 did not impact collective bargaining or mandate at-will employment and SB 1007 violated article I, sections 29 and 13, the circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.[15]

_____
W. Brent Powell, Judge

All concur.

---

[15] In their fifth point on appeal, the State argues SB 1007 does not violate article I, section 29 under the circuit court's interpretation. This Court need not address this argument as this Court has not adopted the circuit court's interpretation. In their sixth point on appeal, the State argues Unions failed to establish the requisite elements for a permanent injunction. Point six similarly does not warrant review as the case and the circuit court's entry of permanent injunction are reversed and remanded to the circuit court.